Rosenkrans *v*. Snover.

ROSENKRANS *vs*. SNOVER.

1. If commissioners of partition, in a sale of the lands by them, give a deed for one parcel, containing a provision that no buildings shall be erected thereon to darken the windows of a building standing along the line upon an adjoining parcel, sold and conveyed by them at the same time, the purchaser takes subject to such easement for the benefit of the adjoining parcel, although such condition was not in the conditions of sale; and he objected to its being put in the deed. He is bound by the acceptance of a deed with such condition.

2. Words in a deed, over which a crooked line is drawn with a pencil, as if for cancellation or erasure, but which are not actually canceled or erased, form part of the deed; and if the purchaser accepts the deed, and has it recorded, he will be bound by such acceptance, notwithstanding he insisted that such words should not be in the deed, and was told by the grantor that they had been canceled. His only remedy is by suit to reform the deed.

3. Commissioners of partition, when directed to sell, have power to sell one part, with an easement in another part annexed to it, and to sell the servient parcel subject to such servitude.

On motion to dissolve injunction.

*Mr. Shipman*, for motion.

*Mr. J. M. Robeson*, contra.

THE CHANCELLOR.

John Snover died in the year 1865, seized of a number of houses and lots in the village of Blairstown, in the county of Warren. The house and lot belonging to the complainant, known as the hotel lot, and the house and lot belonging to the defendant, which adjoins the hotel lot on the east, were parts of his estate. On an application for partition among his heirs, in the Orphans' Court of the county, the court directed the property to be sold by the commissioners appointed to make partition. The commissioners, at a public sale, in November, 1865, sold the hotel lot to Joseph Snover, and the lot of the defendant to him and one Lauterman. The

deeds for both lots were delivered on the 2d day of April, 1866. Joseph Snover, in April, 1867, conveyed the hotel lot to the complainant, and the title to the defendant's lot became afterwards vested in him solely. Both lots had their fronts on the same street, and the hotel was built on the east line of the hotel lot, which was the west line of defendant's lot. There was an alley of four feet wide between the hotel and the building on the defendant's lot. This alley extended about sixty feet from the street; and at and across the rear of this alley, the hotel lot extended four feet further to the east. In the rear of the hotel a kitchen was built, which extended over and occupied this additional four feet, so that the buildings on the hotel lot, both main building and kitchen, for their whole depth, stood upon the line between the two lots. The building on defendant's lot did not extend beyond the alley. In the easterly end of the hotel there were six windows opening on the defendant's lot, and in the easterly side of the kitchen, there were four widows opening on the defendant's lot. John Snover had within twenty years purchased these lots from a former owner, and at the purchase the buildings had been erected with the windows placed in the same manner as they were at the sale by the commissioners. Before this, at one time, there had been built and kept in the alley, by this former owner, a stairway to go into the second story of his building, which was occupied as a physician's office. In the deed to the defendant and Lauterman, from the commissioners, there is this clause: "It is understood and agreed between the parties, that the said Lauterman and Snover are not to erect any buildings adjoining the tavern house to darken the windows, more than to put up a stairway in the alley, between the two houses, to go into their own houses." The defendant denies in his answer, the allegation that this clause was put there with the consent of him and Lauterman, but admits that it was inserted in the deed by the commissioners, against their remonstrance, and without their consent. And he alleges in his answer, that the commissioners promised them that the clause should be

erased from the deed, and that they supposed it was erased ; that over this clause in the deed a crooked line is drawn as if for erasure, and that in the attestation of the deed, it is recited that the erasures and interlineations on the third page, were made before execution, and that this clause is on the third page, on which there are erasures and interlineations of other words. The defendant contends, that the commissioners had no right to insert this clause, without his and Lauterman's consent, and that they were entitled to a deed of the lot by its simple metes and bounds, without this reservation.

The defendant was erecting, and about to finish an addition to the building on his lot, which extends beyond, and when finished will close up two of the windows in the kitchen of the hotel, and for that purpose has cut away the eaves of the roof over the kitchen which projected upon his lot.

The defendant admits that in the deed from the commissioners through which he claims, there is the clause above set forth. In this case, it cannot be considered whether the commissioners had the right to insert that clause in the deed, or whether the defendant is not entitled to have the deed reformed on account of the misrepresentation of the commissioners that it had been erased from the deed. Such relief could only be had in a proper suit for that purpose. It is clear from the answer, that the clause is in the deed as delivered and recorded ; and a crooked line drawn over the words, and not across them, can be of no effect, as the words remain uncanceled and not erased, and the note in the attestation clause is warranted by the other erasures and interlineations on the page referred to.

There can be no doubt but that commissioners like these have the power, if it will, in their judgment, be a benefit to the sale of property, to annex to one part an easement in another part of the property to be sold, and to sell and convey such other part subject to the servitude of such easement. The defendant and Lauterman might not perhaps, in this case, have been bound to accept a deed with a clause

establishing such easement. But they did accept it, and the defendant now holds the property by virtue of that deed, and cannot repudiate its provisions unless it be reformed. The kitchen, being part of the hotel, is clearly included in the clause, and is entitled to have its windows protected. So far as the building adjoining the kitchen is concerned, the injunction must be continued.

As to the stairway in the alley, this clause would seem to give the right to erect it, even if without such clause the defendant could not erect it. This deed was delivered at the same time as the deed to Joseph Snover, and they would seem to be one transaction; and the contents of this may have been known to Joseph Snover. The presumption is, that they were known to him. If the deed to him was given after this deed, or with knowledge of its contents, he and the complainant would be bound by this provision. For this reason, and because the defendant in his answer denies that he intends to erect in the alley any stairs that will obstruct the passage of light or air to the building of the complainant, and also because the injury is not irreparable, and could easily be removed by abating the stairs if it did illegally obstruct the light and ventilation, the injunction as to erecting a stairway in the alley must be dissolved. There will be no costs allowed to either party.